UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BRADLEY SMITH, an individual, | ) |
| Plaintiff Pro Se, | ) |
| vs. | ) Case No. 1:16-cv-00144-S-LDA |
| DEBORAH GARCIA, | ) |
| Defendant. | ) |
| and | ) |
| MYVESTA FOUNDATION, | ) |
| Defendant-Intervenor. | ) |

**MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO VACATE JUDGMENT**

This lawsuit constitutes a fraud on the Court. It was filed pro se in the name of an individual in California who runs a "debt relief" company called Rescue One Financial, alleging defamation based on anonymous comments which, the complaint alleged, had been posted by a Rhode Island resident to articles on the "Get Out of Debt Guy" web site, which is directed to discussing debt issues and, in particular, to criticizing misleading and illegal conduct by various debt relief companies. The complaint was accompanied by a "consent motion" and a proposed "consent order," each of which was signed by the pro se plaintiff and by a supposed Rhode-Island-based defendant. Those documents reveal the real objective of the litigation: not to get relief against the allegedly defamatory comments, but to secure the Court's imprimatur on an order calling on Google and other search engines to remove entire articles on the "Get Out of Debt Guy" web site from the databases of search engines, even though there is no allegation that anything in those articles is false or defamatory. Search engine referrals, however, are the principal way for members of the public to find articles

about particular debt relief companies in which they are interested; they are also the main way that Myvesta Foundation, the operator of the web site, communicates its views to the public and secures readers to whom it can display the advertising whose revenues enable the operation of its web site.

Myvesta was never told that this action was pending or that relief was being sought to harm its interests. Myvesta was, therefore, unable to bring to the Court's attention the several reasons to conclude that the Court lacks subject matter jurisdiction over the lawsuit, in part because some of the factual allegations in the complaint are false, why the complaint fails to state a claim on which relief can be granted, and why the relief provided by the "consent order" is itself barred by federal law. Accordingly, Myvesta has been granted leave to intervene in this action, and now moves to vacate the judgment. By a separate motion, Myvesta will move to dismiss the complaint and for an award of attorney fees under the anti-SLAPP law.[1]

**STATEMENT OF THE CASE**

This lawsuit involves a pair of anonymous comments that were posted to an article on the "Get out of Debt Guy" web site written by Steve Rhode, a North Carolina resident who has substantial experience in the area of giving advice to consumers about how to recover from crushing amounts of consumer debt. The blog is hosted by Myvesta Foundation, a North Carolina-based company organized under the laws of Delaware. Rhode himself writes the articles on the blog, often in response to questions from consumers that are submitted through a contact form on the web site. The blog also includes a comment feature, whereby its users may submit their own comments on

---

[1]This brief is similar to the proposed memorandum in support of motion to vacate that was submitted with the motion for leave to intervene. It has been updated to include subsequent developments, most of which were reflected in the Supplemental Affidavit of Paul Alan Levy filed on November 15, 2016.

stories; users often use this feature to interact with each other. Rhode often participates in the discussions in the comment section, always using his own name.

The complaint identifies two anonymous comments that were posted on the "Get Out of Debt Guy" web site. The first comment, posted in 2012 under the pseudonym "DebtsettlementisaLie," is appended to an article entitled *Alleged Former Employee Speaks Out About Rescue One Financial Loan Offers*, https://getoutofdebt.org/44980/alleged-former-employee- speaks-out- about-rescue-one- financial-loan-offers#comment-689700798 (cited as "*Alleged Former Employee Speaks Out*"), which describes contentions by a supposed former employee of that company who wrote to the blog to blow the whistle on what he considered to be deceptive and reprehensible conduct by that company. The comment is largely directed at "Matt Hearn," another participant in the online discussion of this article.[2] The second comment, also posted in 2012 and to the same article, but under the pseudonym "Joni," is similarly directed at "Matt Hearn."[3] The article itself discusses a matter of substantial public concern—deceptive tactics employed by various debt relief companies, with specific reference to Rescue One Financial, which is headed up by Bradley Smith, the pro se

---

[2] "You have got to be kidding me. You posted this because they 'pay' you for your shitty training. Of course your gonna back up your pay check! I've seen you Matt at the debt settlement leadership conference yelling at the girls booking your room. You look like a little dick guito fuck. Trust me... We are coming after these companies that are performing bait and switch marketing. If I were you I would exit training because you suck and tell Stanley to stop spamming the world with your garbage. CONSUMERS!!!! DON'T THINK TWICE ABOUT IT. ALL THESE COMPANIES ARE IN BED TOGETHER AND THEY ARE TRYING TO MAKE MONEY OFF OF YOU BY RUINING YOUR CREDIT!"

[3] "Rescue One Finanical [sic]is engaged under the cloak of Freedom Debt Relief Bait & Switch operation.. They need to stop sending out deceptive mailers & be shut down or be honest on who they are?? They have given plenty of opportunities to respond ..yet they choose to be silent ..why???DOES RESCUE ONE FINANCIAL HAVE A LENDERS LICENSE??? SIMPLE QUESTION WHICH HAS NOT BEEN ANSWERED..."

plaintiff in this case. The article includes a response received directly from Bradley Smith in August 2012, which begins, "It is unclear whether this really was a former employee and if it was, they surely were not employed here long, because they do not have a firm understanding of how we work . . .."

The complaint alleges, incorrectly, that these comments were posted, respectively, at the following pair of articles: *Reader Raises Concerns About Financial Rescue, LLC and Success Link Processing, LLC by Consumer*, https://getoutofdebt.org/86646/reader-raises-concerns-about-financial -rescue-llc-and-success-link-processing-llc-by-consumer (cited below as "*Reader Raises Concern*"), and *My Parents Were Contacted by Debt Relief Centers of America–Sharron*, https://getoutofdebt.rg/46403/ my-parents-were-contacted-by- debt-relief-centers -of-america-sharron (cited in this brief as "*My Parents Were Contacted*"). All three actual articles are available online and are attached, together with all of their comments to the Rhode Affidavit ¶¶ 19, 21, and Exhibits B, D, and E. Each of these articles also discussed issues of public concern—deceptive tactics employed by several different debt relief companies, state enforcement action against one of the companies discussed, and the criminal record of someone with the same name as the owner of one of those companies.

The complaint, filed on March 23, 2016, in the name of plaintiff Bradley Smith, alleges that the "quoted language [from the two anonymous comments] is false and misleading." ¶ 12. The complaint identifies "Deborah Garcia" as the defendant, alleges that she "is an individual residing in Rhode Island," ¶ 4, further alleges that "the **Defendant** . . . is the party referenced in the posting as the former employee," ¶ 6 (emphasis added); this allegation is made despite the fact that Bradley Smith's own public comment, which Myvesta published at his request, expressed doubt that the

former employee whose communication was featured in the "*Alleged Former Employee Speaks Out*" article, really was a former employee. Rhode Affidavit ¶ 19 and Exhibit B. The complaint also alleges that it was the same defendant who "caused the [comments] to be posted on the website." Complaint ¶¶ 8, 11 (second ¶ 11).

Filed simultaneously with the complaint was a "Consent Motion for Injunction and Final Judgment," which is signed by "Brad Smith," using a street address in Irvine, California, where the business of which he is the founder and CEO, Rescue One Financial, was formerly located. These documents were also signed by "Deborah Garcia," listing an address in Warwick, Rhode Island. Attached to the motion was a proposed order, also signed by "Brad Smith" and "Deborah Garcia" at the same addresses, under which the Court would place its own imprimatur on the proposition that "Defendant Deborah Garcia posted false and defamatory statements about Plaintiff Brad Smith" on the *Reader Raises Concern* and *My Parents Were Contacted* articles on the Get Out of Debt Guy site. The order directed defendant Garcia to remove these articles from the Internet, but provided as well that, in the event defendant Garcia was unable to have the articles removed that way, plaintiff **Smith** was to submit the signed court order to "Google, Yahoo, Bing and any other search engine" so that links to these two pages could be removed "pursuant to their existing policies concerning the de-indexing of defamatory material." There was no provision for notifying the site owner about the order before writing to Google so that the site owner could avoid delisting by removing the comments. The order was signed by the Court on April 22, 2016, and entered on the docket that same date.

There is no evidence that Deborah Garcia is the author of either of the two anonymous comments, that Bradley Smith has any basis for knowing who the authors were, or, indeed, that

Deborah Garcia lives in Rhode Island. Both comments were posted under pseudonyms, and although Myvesta has both the email address given with each comment, and the Internet Protocol address ("IP address") from which each comment was posted (and which could likely, in turn, be used to track down the commenters), Myvesta has never received a subpoena seeking identifying information about the posters. And both comments were posted using IP addresses reflecting that the Internet users who posted them were in California. Rhode Affidavit ¶ 13. Moreover, Deborah Garcia's mailing address is identified in DN 2 and DN 3 below her signature as "Warwick," even though a search of Google Maps reveals no such street in Warwick; the street address does correspond to that of a condominium complex in West Warwick. An online search offered no indication that Deborah Garcia lives at that address. Levy Affidavit ¶¶ 10, 11. Finally, a letter to Deborah Garcia and the service copies of Myvesta's motion for leave to intervene were both returned by the U.S. Postal Service as undeliverable. Supplemental Levy Affidavit ¶ 2 and Exhibit 2.[4] Thus, there is reason to doubt that a resident of Rhode Island named Deborah Garcia is the actual poster of the two anonymous comments and truly signed the documents "admitting" that the statements were false and defamatory.

Another fraudulent aspect to the lawsuit is that it appears that Bradley Smith's signature was forged on the papers. Because Rhode had previously been in contact with Bradley Smith (indeed, he placed Smith's response to accusations featured in an article as an "update" to the text of the article itself), he contacted Smith to ask about his involvement in the complaint that was filed in his name. Rhode Affidavit ¶ 19 and Exhibit B. Smith initially responded by saying that he had needed

---

[4] For ease of reference, the exhibits to the Rhode Affidavit are lettered, but the exhibits to the two Levy Affidavits are numbered; the numbering of the exhibits to the Supplemental Levy Affidavit begins with the number 2, considering that Mr. Levy's affidavit has only an Exhibit 1.

to make inquiries "to make certain that no one had filed anything on my behalf," and then categorically denied involvement, saying that the signature on the papers was not his. *Id.* Exhibit C. However, when Smith was asked to execute an affidavit confirming his noninvolvement under oath, he said that he was represented by counsel so that Myvesta's counsel should not communicate with him any further. Levy Affidavit Exhibit A. That attorney has since confirmed that Smith did not sign his names on these papers and, indeed, did not authorize the filing of the papers in his name. Levy Supplemental Affidavit ¶¶ 3-4 and Exhibit 3.

Intervenor Myvesta Foundation was never notified of the order. It learned of the order's existence as a result of a public controversy over a bogus lawsuit and consent order filed by a different plaintiff in a different court. Levy Affidavit ¶ 2. In response to an article by Mr. Levy describing that other case, another blogger contacted undersigned counsel Mr. Levy with a copy of the papers in this case, which the blogger had found through a Google search. *Id.* ¶ 3. Mr. Levy contacted Steve Rhode, the principal of Myvesta Foundation, to provide him with the documents, *id.* ¶ 4; this was the first time Rhode had heard about the case or the order. Rhode Affidavit ¶ 19. Since the motion for leave to intervene was filed, we have learned that Smith's company signed an agreement with a company called "RIR 1984 LLC" that promised to provide "search engine optimization services," including the use of unspecified "proprietary methods" to secure the removal of critical pages from search engine indexes. Levy Supplemental Affidavit ¶ 5 and Exhibits 4 and 5. Even more recently, we have learned that the funds for the filing of this case were provided to the process server by RIR 1984 LLC (a copy of the check will be submitted with the anti-SLAPP motion).

Moreover, this is not the only case in which Myvesta has been the subject of attack in the

form of a complaint that was purportedly settled (within a a few days of the filing) through the entry of an order compelling the removal of "the defamation" from its web site and then calling for the submission of the consent order to Google and to other search engines so that they can remove the pages from their search databases. Rhode Affidavit ¶ 23. The result has been to protect Bradley Smith's company, Rescue One Financial, from public scrutiny of what Myvesta has to say about that company. Myvesta has intervened in this case to protect its interests, and now moves to have the judgment vacated. By separate motion, it will move the Court to dismiss the complaint and seek an award of attorney fees and damages under the anti-SLAPP statute..

**ARGUMENT**

Rule 60(b) provides a means for the Court to exercise its equitable power to relieve parties of the effects of judgments that were entered improvidently for a variety of reasons. Motions to vacate under Rule 60 can be granted when the merits of the case have been adjudicated, but the case for vacating the judgment is especially strong where the judgment is entered by default or by consent and facts later come to light that vitiate the basis for the default or consent. As explained by Wright & Miller,

> The cases calling for great liberality in granting Rule 60(b) motions, for the most part, have involved default judgments. There is much more reason for liberality in reopening a judgment when the merits of the case never have been considered than there is when the judgment comes after a full trial on the merits. Based on the remedial nature of Rule 60(b), the discretion of the district court to deny a motion for relief is limited. As long as the movant seeking timely relief has a meritorious defense, doubt should be resolved in favor of a motion to set aside the default judgment.

Wright, Miller *et al.,* 11 Fed. Prac. & Proc. Civ. § 2857 (3d ed.)

Here, relief was granted to the disadvantage of Myvesta precisely because the case was filed without

giving it any notice and thus affording it an opportunity to call the defects in the complaint, and the controlling law, to the Court's attention.

Four separate subsections of Rule 60(b) warrant grant of the motion to vacate judgment in this case. First, Rule 60(b)(1) authorizes the vacating of judgment based on "mistake, inadvertence, surprise, or excusable neglect." Here, Myvesta was surprised by the issuance of a judgment prejudicial to its interests without having been notified of the litigation and the proposed "consent order" and thus being given a chance to oppose it, and the person filing the complaint and consent order committed several "mistakes" in listing the facts. Moreover, at least in some circuits, the "mistakes" that can be remedied under this subsection include judicial mistakes. *Nisson v. Lundy*, 975 F.2d 802, 806 (11th Cir. 1992); *Sec. Mut. Cas. Co. v. Century Cas. Co.*, 621 F.2d 1062, 1067 (10th Cir. 1980). Although the First Circuit has disapproved of that approach in cases where the party harmed by the mistake could and should have filed a motion for a new trial under Rule 59(e), *Silk v. Sandoval*, 435 F.2d 1266, 1267-1268 (1st Cir. 1971), the Court's mistakes of law and fact in **this** case stemmed from the facts that a consent motion was presented pro se on an ex parte basis that deprived Myvesta of the opportunity to call the law and correct facts to the Court's attention, and that Myvesta did not learn of the mistakes until after the time for seeking Rule 59(e) relief.

Second, Rule 60(b)(2) allows a judgment to be vacated based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." The present motion is based on new evidence about the identity of the authors of the allegedly defamatory anonymous comments, about the residence of the defendant, about whether the anonymous comments are "of and concerning" the plaintiff, and, in part, on evidence that raises questions about whether the pro se plaintiff is the individual who signed the complaint and the

consent motion. Intervenor Myvesta could not have discovered that evidence in time to move for a new trial because it was not notified of the litigation or given an opportunity to participate.

Third, Rule 60(b)(3) allows vacating a judgment because of "fraud . . ., misrepresentation, or misconduct by an opposing party." Here, the pro se parties to the litigation appear to have misrepresented the residence of the person(s) who posted the anonymous comments and of the name given as that of the defendant, and they deliberately denied notice to Myvesta, although the evident purpose of the litigation was to deprive Myvesta of the search engine listings that provide a crucial means by which it communicates the substance of its online articles, the substance of which is not alleged to be defamatory. The assertion by the named plaintiff in this case, Bradley Smith, first individually in an email to Rhode, and then through his counsel Robby Birnbaum, that he neither signed the papers submitted in his name nor authorized them to be submitted on his behalf, further supports Myvesta's argument that there has been a fraud on the Court.

Finally, Rule 60(b)(4) authorizes vacating the judgment on the ground that it is "void" in that the Court lacked subject matter jurisdiction, and that it was obtained in violation of constitutional due process. *United States v. Boch Oldsmobile*, 909 F.2d 657, 661 (1st Cir. 1990). As shown in support of the motion to dismiss, diversity jurisdiction and standing were lacking. Moreover, the part of the order that encourages search engines to delist two web pages, to the detriment of Myvesta's interests, was obtained without any notice to Myvesta that would have allowed it to appear to defend its rights. Because Smith had previously communicated with Rhode to send him comments about articles on the Get Out of Debt Guy web site, he knew how to give notice to Myvesta; the denial of such notice must be counted a deliberate strategy.

Moreover, Myvesta moved promptly and diligently to protect its interests once it learned

about this litigation. As the affidavits of Steve Rhode and Paul Alan Levy reflect, it was not until August 19, 2016, that Rhode, and thus Myvesta, learned about this lawsuit and about the order that had been entered in this case. They moved quickly to gather facts about how the litigation had been instituted, which was stymied when Bradley Smith hired counsel and refused to communicate further. This motion is being filed the day after the Court granted leave to intervene, and a proposed motion to vacate was filed, within weeks of Myvesta's having learned of the order's existence. The interests of Bradley Smith—or of RIR 1984 LLC which appears to have filed this action in Smith's name, or of Rescue One Financial which retained the services of RIR 1984 LLC as its agent to secure the delisting of critical web pages—have not been prejudiced by the passage of time between the entry of judgment and the filing of this motion to vacate.

Substantively, the judgment should be vacated for lack of subject matter jurisdiction in that there is no evidence showing that the citizenship of the plaintiff and defendant is diverse, and evidence supplied by Myvesta in support of its motion to dismiss strongly suggests that the authors of both of the allegedly defamatory comments were in California. Moreover, the damages pleaded in the complaint were far less than the minimum amount in controversy that could support diversity jurisdiction. Subject matter jurisdiction is also lacking on Article III standing grounds. The complaint does not plead that the allegedly defamatory anonymous comments are about the pro se plaintiff Bradley Smith, and review of the comments reveals that they say nothing about the plaintiff. The failure to plead that the comments are "of and concerning" Bradley Smith is also fatal to the libel claims on the merits, as is the fact that complaint shows that the anonymous comments where made in 2012, more than three years before the complaint was filed, and hence outside the statute of limitations. These points were all fully argued in support of Myvesta's proposed motion to

dismiss the complaint, and will be repeated with the actual motion is made in a few days.

Even apart from the grounds for dismissing the complaint entirely, there are several substantive grounds for vacating the judgment insofar as it calls for action against Myvesta. First, "[t]o prevail in a defamation action, a plaintiff must prove: (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) damages, unless the statement is actionable irrespective of special harm." *Marcil v. Kells*, 936 A.2d 208, 212 (R.I. 2007) (internal quotation marks omitted); *Khawar v. Globe Int'l*, 19 Cal. 4th 254, 274, 965 P.2d 696, 708 (1998), as modified (Dec. 22, 1998). The elements of falsity and fault are demanded by the First Amendment as well as by state law. *Id.*; *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). Even if Deborah Garcia were truly the author of either of the two anonymous comments, her mere assertion, in signing an unsworn motion, that unspecified parts of the comments were false is not evidence of falsity that would support judgment against Myvesta; nor is there any allegation or proof that Myvesta was even negligent in allowing any portion of the anonymous comments to be published, or that Bradley Smith suffered actual damages from the anonymous comments. Moreover, there is no evidence linking the two web pages that the Court's judgment calls on search engines to delist to the allegedly defamatory anonymous comments. The complaint alleges that they were posted on those two pages, but the evidence provided with the Rhode affidavit shows that they were posted on a **different** article. ¶¶ 19, 21 and Exhibits B, D and E.

Another First Amendment flaw in the judgment is that it extends injunctive relief beyond statements determined to have been false. Even if the judgment were limited to the delisting of the web page on which the anonymous comments appeared, there has been no determination that all of

the statements on the web page itself (as opposed to the two comments) were false. Although there are conflicting rulings about whether the rule against prior restraints permits a permanent injunction **ever** to be issued against the repetition of defamatory statements found to have been defamatory, and that issue is open at the Supreme Court level, *Tory v. Cochran*, 544 U.S. 734, 736 (2005), in the First Circuit, when the interest to be protected by a proposed prior restraint is the privacy or reputation of an individual, damages is the appropriate remedy, not an injunction. *Matter of Providence Journal Co.*, 820 F.2d 1342, 1352 (1st Cir. 1986), *opinion modified on reh'g*, 820 F.2d 1354 (1st Cir. 1987). Moreover, it is settled law that only statements found to have been false and defamatory, meeting the various tests imposed by the First Amendment, may be enjoined. *E.g.*, *Balboa Island Vill. Inn v. Lemen*, 40 Cal. 4th 1141, 1148, 156 P.3d 339, 343 (2007), *as modified* (Apr. 26, 2007). Thus, "a judicial injunction that prohibits speech prior to a determination that the speech is unprotected constitutes a prior restraint." *Auburn Police Union v. Carpenter*, 8 F.3d 886, 903 (1st Cir. 1993). The First Amendment thus bars the injunctive relief in the Consent Order.

The issuance of relief against Myvesta on the theory that it was hosting allegedly defamatory content violated federal law in two additional respects. First, section 230 of the Communications Decency Act, 47 U.S.C. § 230, bars the granting of any relief against Myvesta based on the posting of allegedly defamatory content in the interactive comment section of its web site. *Universal Commc'n Sys. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007); *Giordano v. Romeo*, 76 So. 3d 1100, 1102 (Fla. Dist. Ct. App. 2011). And Rule 65 of the Federal Rules of Civil Procedure does not authorize extending injunctive relief against Garcia, as the putative poster, to Myvesta, absent evidence that it actively aided and abetted violation of the injunction against Garcia. *Blockowicz v. Williams*, 630 F.3d 563, 568 (7th Cir. 2010).

Finally the issuance of relief against Myvesta without any notice violated its constitutional rights. The Due Process Clause requires notice and an opportunity to be heard before a court may take action against a person. *Jones v. Flowers*, 547 U.S. 220, 223 (2006). The Supreme Court has also held that the First Amendment entitles a party to notice and an opportunity to be heard before injunctive relief is issued interfering with its free speech. *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 181-184 (1968).

## CONCLUSION

For all of these reasons, as well as those set forth in support of Myvesta's proposed motion to dismiss, the judgment in this case should be vacated.

Respectfully submitted,

    /s/ Paul Alan Levy
Paul Alan Levy (pro hac vice)
Michael Kirkpatrick

  Public Citizen Litigation Group
  1600 20th Street NW
  Washington, D.C. 20009
  (202) 588-7725
  plevy@citizen.org


    /s/ Jeffrey L. Levy
Jeffrey L. Levy (RI Bar No. 9233)
Charles D. Blackman (RI Bar No. 5522)

  Levy & Blackman LLP
  Suite 2
  469 Angell Street
  Providence, Rhode Island 02906
  (401) 437-6900
  jlevy@levyblackman.com

November 17, 2016                              Attorneys for Intervenor