```
               IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF RHODE ISLAND
                          (Providence)

BRADLEY SMITH,                         )
                                       )
          Plaintiff,                   )
     vs.                               )
                                       )   Case No.:
DEBORAH GARCIA,                        )
                                       )   16-cv-00144-S-LA
          Defendant,                   )
                                       )
MYVESTA FOUNDATION,                    )
                                       )
          Intervenor.                  )
_____       )
```

          TRANSCRIPT OF MOTION HEARING PROCEEDINGS
   BEFORE THE HONORABLE CHIEF JUDGE WILLIAM E. SMITH

        WEDNESDAY, NOVEMBER 16, 2016; 2:04 P.M.
                 PROVIDENCE, RHODE ISLAND


APPEARANCES OF COUNSEL:

FOR THE INTERVENOR:

     Charles D. Blackman
     LEVY & BLACKMAN LLP
     469 Angell Street, Suite 2
     Providence, Rhode Island 02906

     Paul Alan Levy
     PUBLIC CITIZEN LITIGATION GROUP
     1600 20th Street NW
     Washington, DC 20009

          *****************************

               GAYLE WEAR, RPR, CRR
          Federal Official Court Reporter
               800 Lafayette Street
            Lafayette, Louisiana 70501
                   337.593.5222

```
 1   November 16, 2016                            2:04 P.M.

 2                      ---o0o---

 3               P R O C E E D I N G S

 4                      ---o0o---

 5        THE COURT:  All right.  Good afternoon.  This

 6   is the matter of Bradley Smith versus Deborah Garcia.

 7   We're here on a motion to intervene, motion to vacate

 8   judgment, a motion to dismiss, and award attorney's

 9   fees.

10        So, Counsel, let's have you identify

11   yourselves for the record.

12        MR. BLACKMAN:  Your Honor, Charles Blackman.

13   With me is pro hac vice counsel, Paul Levy, on behalf

14   of the Myvesta Foundation.  With the Court's

15   permission, Mr. Levy would like to argue for us.

16        THE COURT:  Okay.  That's fine.

17        MR. LEVY:  And I am Mr. Levy.

18        THE COURT:  I assumed that to be the case.

19   Come on up.  Go ahead.

20        MR. LEVY:  May it please the Court, I am Paul

21   Alan Levy, appearing for the proposed intervenor,

22   Myvesta Foundation.  We are here asking the Court to

23   grant Myvesta Foundation's motion for leave to

24   intervene as a defendant so that it can then move to

25   set aside a consent order that prejudices interests,
```

```
 1    and also seek dismissal of the case.

 2            Simply put, as we see it, this is a

 3    fraudulent lawsuit purportedly filed pro se seeking

 4    relief that was purportedly consented to pro se, but

 5    where the real objective was to serve the interests of

 6    some unidentified third person -- we don't yet know who

 7    that was, although we can guess -- and by obtaining

 8    relief that's prejudicial to another third party, and

 9    that's my client, Myvesta.

10            It's a tactical maneuver that was used by

11    somebody who was sophisticated to a certain extent, but

12    unscrupulous to an extent.  It was presumably an outfit

13    that specializes in what's called search engine

14    optimization, or in the trade known as Black-Hat Search

15    Engine Optimization, taking advantage of the knowledge

16    that Google and other search engines, when they're

17    confronted with an order from a judge that declares the

18    matter to be defamatory, will do the good-citizen thing

19    by exercising its discretion to take the page that's

20    determined to be defamatory out of the search index.

21            The complaint in this case is directed at

22    harming Myvesta's interests.  If we are right that

23    Deborah Garcia is a fictional defendant, Myvesta is the

24    only real defendant in this case.  It's a consent order

25    that prejudices Myvesta's interests, as a practical
```

1  matter.

2          We think the motion for leave to intervene

3  was filed timely, and that's why we think it should be

4  granted.

5          THE COURT:  Explain to me again what

6  Myvesta's interest is here.

7          MR. LEVY:  Myvesta owns the blog on which the

8  pages that the Court's consent order called for Google

9  to take out of the search index, its search index,

10  which Google honored.

11         THE COURT:  All right.  Allegedly, it was the

12  defendant or the alleged defendant who you think is a

13  fictional person, Deborah Garcia --

14         MR. LEVY:  Right.

15         THE COURT:  -- who allegedly wrote the blog

16  entry that was claimed to be defamatory.

17         MR. LEVY:  The complaint alleges that Deborah

18  Garcia is the author of two comments on blog articles

19  on the Myvesta website.  Although, the -- one of the

20  curiosities of the case is that the comments were

21  actually posted to different articles than the one that

22  were sought to be delisted in the consent order.

23         THE COURT:  Okay.

24         MR. LEVY:  So sophisticated, but perhaps a

25  little sloppy as well.

```
 1              THE COURT:  Right.  So now that I've learned
 2    more about this situation and read the reason -- one of
 3    the reasons this was scheduled was that I had read the
 4    blog entry from the -- was it Public Citizen, and this
 5    appears to be part of a pattern of cases that's filed.
 6              MR. LEVY:  It appears.  Professor Volokh has
 7    actually read more of the actual cases than I have.  I
 8    have access to the Dropbox that contains many of them.
 9    But there appear to be a few dozen cases around the
10    country like this, a half or two dozen of which seemed
11    to be -- and I want to make clear this is only seemed
12    to be -- linked to a single operative.
13              THE COURT:  Okay.  So I had -- I tried to
14    reach out, but it didn't work out, but I tried to reach
15    out to the U.S. Attorney's office to attend here today
16    because it seemed to me that now that I've read all
17    these papers, that crimes may have been committed here.
18    And I'm wondering if you have been in touch with any
19    folks in law enforcement in any of the jurisdictions
20    where these cases have been brought to initiate
21    criminal investigations.
22              MR. LEVY:  To some extent, Your Honor.  And I
23    agree with you.  I mean, we have resources and we want
24    to be able to pursue discovery to figure out who ought
25    to pay the attorney's fees under the anti-SLAPP
```

 1    statute, but it's my suspicion that the resources

 2    needed to deal with this problem are much more in the

 3    hands of the authorities.

 4          Because I'm on the public record, I'm not

 5    sure I want to give the other side information about

 6    what -- which jurisdictions, but I do --

 7          THE COURT:  That's fine.  You don't have to

 8    do that.

 9          MR. LEVY:  I do know that Professor Volokh,

10    and I'm party to some communications relating to these

11    communications, is in touch with authorities in at

12    least two jurisdictions where such cases have been

13    filed.  And I would certainly encourage Your Honor --

14    to the extent that Your Honor believes that the

15    involvement of the U.S. Attorney for this district

16    would be appropriate, I would certainly encourage that

17    because in the end, I suspect that dealing with this

18    problem is going to be beyond our needs -- beyond our

19    means.

20          You know, on the one hand, we would like to

21    be -- sort of get our fees back under the SLAPP

22    statute, but the most important thing is to put a stop

23    to this so that it doesn't keep happening.  It seems to

24    me that what Your Honor says in this case and any

25    subsequent investigations that come out and actions

1    that might be taken pursuant to those investigations,

2    might well be the best medicine for the problems that

3    have been brought to light here.

4         THE COURT:  Are there any other cases in

5    which you've reached this point?

6         MR. LEVY:  This is the only case.  I mean,

7    I've been looking very hard for local counsel in

8    Baltimore where some cases involving the interests of

9    my client have been filed in state court.  And I

10   believe I have somebody, but I haven't gotten the final

11   okay because it's a public interest group and they need

12   to have their litigation committee pass on it, and they

13   don't -- haven't yet sort of completed that process.  I

14   do hope to file something -- that is actually a case

15   that was filed by a young lawyer who I think probably

16   got in over his head.

17        THE COURT:  Um-hum.

18        MR. LEVY:  But there may be some

19   accountability there.

20        This morning, we were able to -- we asked in

21   the clerk's office, and apparently the papers were

22   brought to the court by a service entity.  And the

23   filing fee, unlike some other cases where the filing

24   fee was paid with cash, the filing fee here was paid by

25   check.  So there may well be some traceability there.

1          We would like the Court's permission to --

2     because we filed the motion under the anti-SLAPP

3     statute, there is an automatic stay of discovery.  The

4     SLAPP statute provides for specified discovery allowed

5     on motion and for just cause, and we would like

6     permission to take discovery to try to identify whoever

7     it is who's behind this, number one, and whoever

8     they're filing on behalf of, because the argument -- I

9     mean, I can't say I've completed my research, but I

10    think an argument can be made that the principal might

11    be responsible for the actions taken by the agent.

12         THE COURT:  Now, if I understand some of the

13    attachments that you included with your affidavit, it

14    appears that you've been in touch with the attorney for

15    Mr. Brad Smith.

16         MR. LEVY:  Yes.

17         THE COURT:  Now, Brad -- is Bradley Smith,

18    who is purported to be the pro se plaintiff in this

19    case, who now says he's not, but are you sure you got

20    the right Brad Smith?

21         MR. LEVY:  Well, the address on the complaint

22    or at least the address on the consent papers --

23         THE COURT:  Yes.

24         MR. LEVY:  -- is the old address for the

25    Rescue One Financial Company which was the topic of the

1    blog article by Myvesta Foundation, and more

2    specifically by Mr. Ruddie, which discusses the Rescue

3    One Company.  So I think we probably do have the right

4    Brad Smith for that reason.

5          I actually had a former Public Citizen

6    person, who is now a law student at UC Irvine, go by

7    that address, and it's not there anymore.  That company

8    is no longer there; they've moved to a different

9    location.  But I think we have the right Bradley Smith.

10   And, you know, from his perspective, I can imagine why

11   he wouldn't want to be subject to personal jurisdiction

12   in Rhode Island by appearing here, not to speak of

13   spending money to send somebody here.  I think his

14   company may have a problem, but he individually has

15   probably made a wise choice by not appearing.

16         THE COURT:  Now, but he contends that the

17   signature on the papers are forgeries; is that correct?

18         MR. LEVY:  He said he didn't sign them.  I

19   think that's the same thing, but, yes.  His lawyer

20   represented to me that his client, Bradley Smith -- and

21   the lawyer is somebody -- I mean, I don't know this

22   lawyer, but he's a lawyer with a substantial firm.  I

23   have no reason to doubt the veracity of what he's

24   telling me on behalf of his client.  He says that his

25   client says he did not sign the papers and did not

1    authorize the filing of the papers in his name.

2            THE COURT:  All right.

3            MR. LEVY:  And I think you'll actually see

4    that reflected in the email that explains why --

5            THE COURT:  I did.  I read the email.

6            All right.  So your plan, if I grant the

7    motion for you to intervene as a defendant, you then

8    become a defendant, but you've also filed a motion

9    for -- to vacate the judgment, as well as the motion to

10   dismiss and award attorney's fees; right?

11           MR. LEVY:  We have, although it's not -- I

12   filed that as an attachment to our motion to intervene.

13           THE COURT:  Okay.

14           MR. LEVY:  I think the better course would be

15   to set a schedule for an opposition to that, in case

16   somebody wants to do -- I intend -- if the motion for

17   leave to intervene is granted, and I would ask the

18   Court to order the motions filed nunc pro tunc,

19   perhaps, I would intend to serve the papers on

20   Mr. Ruddie, who is the person who signed the contract

21   with Rescue One Financial, just in case he wants to

22   appear now.  I can't imagine that he will, but he ought

23   to have the chance.

24           And meanwhile, I would like the opportunity

25   to take discovery to figure out if in fact it was this

1    person's company or, if not, who else.

2              THE COURT:  All right.  Very good.  So how

3    much time do you want for the discovery that you would

4    like to take?

5              MR. LEVY:  I'm going to be out of the country

6    with my family from December 21 to January 12.  I would

7    like initially until March 1.

8              THE COURT:  Okay.  All right.  Then what I

9    will do is I'll grant the motion to intervene on behalf

10   of Myvesta Foundation and set a schedule for discovery

11   until March -- did you say March 1st?

12             MR. LEVY:  I think March 1.

13             THE COURT:  That's fine.

14             MR. LEVY:  I expect that there may be some

15   elusive characters on the other end of this case.  I

16   might end up asking for more, but I want to give myself

17   and other people a hard deadline.

18             THE COURT:  That's fine.  And then now that

19   you're a -- your client is a defendant in the case, you

20   can formally file the motion to vacate the judgment,

21   and we'll give the other parties an opportunity to

22   object to that.

23             If there is no objection to the motion to

24   vacate the judgment, then I'll grant the motion and

25   vacate the judgment.  So we'll see what transpires with

1    that.  And then you can docket at your leisure, I

2    guess, the motion to dismiss.  But I don't think you

3    want to be filing a motion to dismiss while your

4    discovery is ongoing.  So...

5            MR. LEVY:  I'm not -- the practical problem

6    for our client is getting, excuse me, getting the order

7    vacated.

8            THE COURT:  Um-hum.

9            MR. LEVY:  I think you could actually grant a

10   motion to dismiss, and we would then be pursuing

11   discovery on the question of who owns attorney's fees.

12   So I would like to file the motion.  If Your Honor

13   thinks it's better to keep it on hold, I can --

14           THE COURT:  No.  I'm certainly happy to have

15   you move it --

16           MR. LEVY:  Right.

17           THE COURT:  -- move it forward.

18           MR. LEVY:  Right.

19           THE COURT:  So I have no problem with you

20   filing both at the same time, and --

21           MR. LEVY:  Okay.

22           THE COURT:  -- give the parties an

23   opportunity, whoever they are, to file whatever they

24   want to file.

25           But I'm also going to -- I am going to have a

1    transcript of this proceeding prepared, and I'm going

2    to order the Clerk to send a copy of the file, all of

3    your filings, as well as the transcript of this

4    proceeding this afternoon to the United States

5    Attorney's office for them to review because it does

6    appear to me, as I said earlier, just at first blush,

7    that there's potentially multiple crimes that have been

8    committed, both fraud and potentially forgery.  And

9    various kinds of fraud, I think, are in play here, and

10   so I think it is something that law enforcement should

11   become aware of and investigate.

12           I'm embarrassed that this order, this consent

13   order, was signed, but it shows you just how, you know,

14   in a busy court, how something like this can happen.

15   But I'm, frankly, if everything that's in here is true,

16   which it appears to be, I'm pretty outraged about it.

17           MR. LEVY:  If I may, Your Honor, it's our

18   observation that these cases tend to be filed in

19   big-city courts where, I mean, as a lawyer, I've been

20   litigating for nearly 40 years now and I know the

21   pressures that federal district court judges are under.

22   And I'm not much in state court in big cities, but, I

23   mean, I know they're under a heavy sort of paper

24   caseload pressures as well, and somebody's taking

25   advantage of that.

```
 1              THE COURT:  Yeah.  Well, I'm sure in time it
 2     will get sorted out.
 3              MR. LEVY:  Thank you, Your Honor.
 4              THE COURT:  All right.  Thank you very much.
 5     We'll be in recess.
 6              THE COURTROOM DEPUTY:  All rise.
 7              (Adjourned at 2:22 p.m.)
 8                   *    *    *    *    *
 9           CERTIFICATE OF OFFICIAL REPORTER
10
11              I, Gayle Wear, Federal Official Court
12     Reporter, in and for the United States District Court,
13     do hereby certify that pursuant to Section 753, Title
14     28 United States Code that the foregoing is a true and
15     correct transcript of the stenographically reported
16     proceedings held in the above-entitled matter and that
17     the transcript page format is in conformance with the
18     regulations of the Judicial Conference of the United
19     States.
20
21                        Dated 19th day of November, 2016.
22
23
24                        /s/ Gayle Wear
                           GAYLE WEAR, RPR, CRR
25                         FEDERAL OFFICIAL COURT REPORTER
```