UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BRADLEY SMITH, an individual, | ) |
| | ) |
| Plaintiff Pro Se, | ) |
| | ) |
| vs. | )   Case No. 1:16-cv-00144-S-LDA |
| | ) |
| DEBORAH GARCIA, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| MYVESTA FOUNDATION, | ) |
| | ) |
| Defendant-Intervenor. | ) |

**MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS
AND FOR AWARD OF ATTORNEY FEES AND DAMAGES**

This lawsuit, filed in the name of California resident Bradley Smith and against supposed Rhode Island resident "Deborah Garcia," alleges that two anonymous comments, posted to a pair of articles on the "Get Out of Debt Guy" web site, contain false and defamatory content. However, the real objective of the lawsuit was to impair Internet users' access to the articles themselves, and to deprive Myvesta Foundation, the owner of the web site, of its First Amendment right to communicate the content of those articles to Internet users who showed their interest in the issues and companies discussed in the two articles by entering words used in those articles as search terms on search engines. The real aim of the complaint is shown by the "consent motion" and "consent order," signed in the names of the two parties and filed simultaneously with the complaint, which calls for Google and other search engines to remove the entire articles themselves from their search databases, not just the anonymous comments.

Defendant-intervenor Myvesta Foundation has moved the Court to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and for failure to state a claim on which relief can be granted, and to rule that the action seeks relief against intervenor in violation of the immunity established by the Rhode Island anti-SLAPP statute, R.I. Gen. Laws Section 9-33-2(e). The case is outside the Court's subject matter jurisdiction because it is a diversity claim for significantly less than the minimum amount in controversy and there is no evidence that the citizenship of the parties is diverse. Moreover, it has been brought in the name of an individual plaintiff who lacks standing to sue because he is not criticized in the anonymous comments. The purported defamation claim is untimely because the complaint was filed more than three years after the anonymous comments were published. Moreover, the relief sought against intervenor's web site—the removal of two pages from search engine databases because of allegedly defamatory content provided by another—violates section 230 of the Communications Decency Act.

**STATEMENT OF THE CASE**

This lawsuit involves a pair of anonymous comments that were posted to an article on the "Get out of Debt Guy" web site written by Steve Rhode, a North Carolina resident who has substantial experience in the area of giving advice to consumers about how to recover from crushing amounts of consumer debt. The blog is hosted by Myvesta Foundation, a North Carolina-based company organized under the laws of Delaware. Rhode himself writes the articles on the site, often in response to questions from consumers. The site also features a comment feature, whereby users may submit their own comments on stories; users often use this feature to interact with each other. Rhode often participates in the discussions in the comment section, always using his own name.

The complaint identifies two separate anonymous comments that were posted on the "Get Out of Debt Guy" web site. The first comment, posted in 2012 under the pseudonym "DebtsettlementisaLie," is appended to an article entitled *Alleged Former Employee Speaks Out About Rescue One Financial Loan Offers*, https://getoutofdebt.org/44980/alleged-former-employee-speaks-out-about-rescue-one-financial-loan-offers (cited as "*Alleged Former Employee Speaks Out*"), Rhode Affidavit Exhibit B.[1] The article describes contentions by a supposed former employee of Rescue One Financial who wrote to the blog to blow the whistle on what he considered to be deceptive and reprehensible conduct by that company. The comment is largely directed at "Matt Hearn," another participant in the online discussion appended to the article.[2] The second comment, also posted in 2012, but under the pseudonym "Joni," is similarly directed at "Matt Hearn" and appears in the comments on that same article.[3] The article's subject is a matter of substantial public concern—deceptive tactics employed by various debt relief companies, with specific reference to

---

[1] Citations to the "Rhode Affidavit" and to the "Levy Affidavit" refer to the affidavits submitted with the motion for leave to intervene, Docket Entry Numbers 4-3 and 4-2 (DN 4-3 and 4-2), respectively. "Levy Supplemental Affidavit" refers to DN 9.

[2] "You have got to be kidding me. You posted this because they "pay" you for your shitty training. Of course your gonna back up your pay check! I've seen you Matt at the debt settlement leadership conference yelling at the girls booking your room. You look like a little dick guito fuck. Trust me... We are coming after these companies that are performing bait and switch marketing. If I were you I would exit training because you suck and tell Stanley to stop spamming the world with your garbage. CONSUMERS!!!! DON''T THINK TWICE ABOUT IT. ALL THESE COMPANIES ARE IN BED TOGETHER AND THEY ARE TRYING TO MAKE MONEY OFF OF YOU BY RUINING YOUR CREDIT!"

[3] "Rescue One Fininical [sic] is engaged under the cloak of Freedom Debt Relief Bait & Switch operation.. They need to stop sending out deceptive mailers & be shut down or be honest on who they are?? They have given plenty of opportunities to respond ..yet they choose to be silent ..why???DOES RESCUE ONE FINANCIAL HAVE A LENDERS LICENSE??? SIMPLE QUESTION WHICH HAS NOT BEEN ANSWERED..."

one such company, Rescue One Financial, which is headed up by Bradley Smith, the pro se plaintiff in this case. The article includes a response received directly from Bradley Smith in August 2012, which begins, "It is unclear whether this really was a former employee and if it was, they surely were not employed here long, because they do not have a firm understanding of how we work . . .."

The complaint alleges, incorrectly, that these comments were posted, respectively, at the following pair of articles: *Reader Raises Concerns About Financial Rescue, LLC and Success Link Processing, LLC by Consumer*, https://getoutofdebt.org/86646/reader-raises-concerns-about-financial-rescue-llc-and-success-link-processing-llc-by-consumer (cited below as "*Reader Raises Concern*"), and *My Parents Were Contacted by Debt Relief Centers of America–Sharron*, https://getoutofdebt.org/46403/my-parents-were-contacted-by-debt-relief-centers-of-america-sharron (cited in this brief as "*My Parents Were Contacted*"). The actual online articles are available online and are attached, together with all of their comments, to the Rhode Affidavit as Exhibits D and E. Each of these articles also discussed issues of public concern: deceptive tactics employed by several different debt relief companies, state enforcement action against one of the companies discussed, and the criminal record of someone with the same name as the owner of one such company. These documents can be considered on the motion to dismiss for lack of subject matter jurisdiction, because it is a speaking motion, *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002). They can also be considered on the motion to dismiss under Rule 12(b)(6) because the comments and the latter two articles are alleged in the complaint and because "a court 'may look to matters of public record in deciding a Rule 12(b)(6) motion.' *Boateng v. InterAmerican Univ.*, 210 F.3d 56, 60 (1st Cir. 2000)." *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 15-16 (1st Cir. 2003). The Court may also consider documents that are cited in the complaint even though the plaintiff did not attach

them to the complaint. *Id.*

Filed on March 23, 2016, in the name of plaintiff Bradley Smith, the complaint alleges that the "quoted language [from the two anonymous comments, i.e. footnotes 1 & 2, above] is false and misleading." ¶ 12. The complaint identifies "Deborah Garcia" as the defendant, alleges that she "is an individual residing in Rhode Island," ¶ 4, and further alleges on information and belief that "the **Defendant** . . . is the party referenced in the posting as the former employee." ¶ 6 (emphasis added). This allegation is made despite the fact that Bradley Smith's public comment, which Myvesta published at his request, expressed doubt that the former employee whose communication was featured in "*Alleged Former Employee Speaks Out*," really was a former employee. And the complaint also alleges that it was the same defendant who "caused the [comments] to be posted on the website." ¶¶ 8, 11 (second ¶ 11).

Filed simultaneously with the complaint was a "Consent Motion for Injunction and Final Judgment," DN 2, which is signed both by "Brad Smith," using a street address in Irvine, California, the city in which Smith's company, Rescue One Financial, is located according to that company's web site. https://rescueonefinancial.com/contact-us/.[4] It was also signed by "Deborah Garcia," listing an address in Warwick, Rhode Island that appears to be apocryphal. Attached to motion was a proposed order, also signed by "Brad Smith" and "Deborah Garcia" at the same addresses, under which the Court would place its own imprimatur on the proposition that "Defendant Deborah Garcia posted false and defamatory statements about Plaintiff Brad Smith" on the *Reader Raises Concern* and *My Parents Were Contacted* articles on the Get Out of Debt Guy site. DN 2-1. The order

---

[4] Review of past iterations of Rescue One's web site on the Wayback Machine, www.archive.org, reveals that the address shown in DN 2-1 was the company's address until some time in late 2015 or early 2016.

directed defendant Garcia to remove these articles from the Internet, but provided as well that, in the event defendant Garcia was unable to have the articles removed that way, plaintiff **Smith** was to submit the signed court order to "Google, Yahoo, Bing and any other search engine" so that links to these two pages could be removed "pursuant to their existing policies concerning the de-indexing of defamatory material." That order was signed by the Court on April 22, 2016, and entered on the docket that same date. DN 3.

There is no evidence either that Deborah Garcia is the author of either of the two anonymous comments, or that Bradley Smith has any basis for knowing who the authors were. Indeed, evidence calls into question whether Deborah Garcia (or whoever posted the comments) lives in Rhode Island. Both comments were posted under pseudonyms, and although Myvesta has both the email address given with each comment and the Internet Protocol address ("IP address") from which each comment was posted (and which could likely, in turn, be used to track down the commenters), Myvesta has never received a subpoena seeking identifying information about the posters. Rhode Affidavit ¶ 13. And both comments were posted using IP addresses reflecting that their users were in California. *Id*. Moreover, Deborah Garcia's mailing address is identified in DN 2 and DN 3 below her signature as "Warwick," even though her address is a condominium complex in **West** Warwick. But there is no evidence that a Deborah Garcia lives at that address in West Warwick. Levy Affidavit ¶¶ 10-11. And mailings to Deborah Garcia at the address listed on the papers have been returned as undeliverable. Levy Supplemental Affidavit ¶ 2 and Exhibit 2. Thus, whether or not Bradley Smith gave his personal consent to having this action filed in his name (an issue addressed below), there is reason to doubt that a resident of Rhode Island named Deborah Garcia is the actual poster of the two anonymous comments and truly signed the documents "admitting" that the statements were false

and defamatory.

Intervenor Myvesta Foundation was never notified of the order. It learned of the order's existence as a result of a public controversy over a bogus lawsuit and consent order filed by a different plaintiff in a different court: a complaint was filed in Maryland in the name of a Georgia dentist, who supposedly had secured a signature from a consumer who had criticized him in reviews posted on Yelp and several other web sites but who supposedly lived in Baltimore. A judge on the Maryland Circuit Court for Baltimore City signed a "consent order" finding the review was defamatory, ordering the Georgia defendant to remove it, but authorizing the plaintiff to submit the order to the hosting web sites for removal if the Defendant was unable to accomplish the removal on his own. Levy Affidavit ¶ 3; see Levy, *Georgia Dentist Mitul Patel Takes Phony Litigation Scheme to New Extremes Trying to Suppress Criticism* (August 19, 2016), http://pubcit.typepad.com/ clpblog/2016/08/georgia-dentist-mitul-patel-takes-phony-litigation-scheme-to-new-extremes-as-a -way-of-suppressing-cr.html. In response to the article cited above, another blogger contacted undersigned counsel Mr. Levy with a copy of the papers in this case, which the blogger had found through a Google search. *Id.* Mr. Levy contacted Steve Rhode, the principal of Myvesta Foundation, to provide him with the documents, *id.* ¶ 4; this was the first time Rhode had heard about the case or the order. Rhode Affidavit ¶ 19.

After Myvesta learned of the litigation, Bradley Smith denied having signed the papers that were submitted bearing his signature and also denied even authorizing the filing of papers in his name. Rhode Affidavit ¶¶ 19-20 and Exhibit C. Smith retained counsel, and that attorney has confirmed Smith's denials. Levy Supplemental Affidavit ¶¶ 3-4 and Exhibit 3. However, Smith's counsel revealed that Smith's **company**, Rescue One Financial, had entered into a contract with a

company called RIR1984 LLC to provide search engine optimization services that included the employment of unspecified "proprietary methods" to secure the removal of web pages on the web site of "Steve Rhodes" [sic] that contained unwelcome criticism. Levy Supplemental Affidavit ¶ 5 and Exhibit 4. The signature for RIR 1984 is by Richart Ruddie. *Id.*

Since the hearing on the motion to intervene, still more facts have come to light. The complaint was brought to Court by a California-based process server, Countrywide Process. DN 1-1 (receipt for the filing fee). That company, however, received the papers for filing from Gerald Feinstein, the "Research Director" of a company called Annuity Sold. Levy Third Affidavit ¶ 2 and Exhibit 7. That company apparently sent in a check in the amount of $525 to pay for the filing fee as well as covering the server's fees; that check was issued on the account of "RIR 1984 LLC," Levy Third Affidavit ¶ 3 and Exhibit 8, which is the same company that signed a "search engine optimization" contract with Bradley Smith's company, Rescue One Financial LLC, Levy Supplemental Affidavit ¶ 5 and Exhibit 4; the check was written on the same bank account into which Rescue One's payments to RIR1984 were to be made. Levy Third Affidavit ¶ 4.[5] Research suggests that Annuity Sold itself may be connected to Richart Ruddie. Rhode Second Affidavit ¶¶ 2-5.

This is not the only case where Myvesta has been the subject of attack in the form of a complaint that was purportedly "settled" through the entry of an order compelling the removal of "the defamation" from its web site and then calling for the submission of the consent order to Google and to other search engines so that they can remove the entire pages from their search

---

[5]Pursuant to the Court's rules, these documents are filed with account numbers redacted. The unredacted documents will be filed under seal should any party question the veracity of the facts stated about the account number.

databases. Indeed, at least one other such case was filed in the name of Bradley Smith as an individual. Rhode Affidavit ¶ 23. The result has been to limit public scrutiny of Bradley Smith's company, Rescue One Financial, based on what Myvesta has to say about that company. Myvesta has moved to intervene in this case to protect its interests, and now moves to have the complaint dismissed. A separate motion seeks to have the judgment vacated.

## I. STANDARDS FOR DECIDING THIS MOTION

Myvesta seeks to dismiss this action both under Rule 12(b) and under the anti-SLAPP statutes of either Rhode Island, where this case was brought, or California, which is the domicile of plaintiff Bradley Smith.[6] Whichever state's anti-SLAPP statute is deemed applicable, the First Circuit has squarely held that a state anti-SLAPP statute is substantive law that should be applied under *Erie* standards when state-law claims are brought in federal court under diversity jurisdiction. *Godin v. Schencks*, 629 F.3d 79, 89 (1st Cir. 2010). "In deciding the question of potential merit [under the California anti-SLAPP statute], the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant." *Wilson v. Parker, Covert & Chidester*, 28 Cal.

---

[6]California law could apply because the plaintiff is from California, and many courts hold, under choice of law principles, that the domicile of a defamation plaintiff governs the substantive law of a defamation action, no matter where the plaintiff files it. *Restatement (Second) of Conflict of Laws* § 150 (1971); *Tobinick v. Novella*, 108 F. Supp. 3d 1299, 1304 (S.D. Fla. 2015), *appeal pending*, No. 15-14889 (11th Cir.). Counsel have not located any Rhode Island cases addressing the choice of law question in defamation cases, but in *Gravina v. Brunswick Corp.*, 338 F. Supp. 1 (D.R.I. 1972), Chief Judge Pettine cited with approval the "existing scholarship on conflict of laws in right of privacy cases [which] has placed great emphasis on the domicile of the plaintiff, attributing to the state of plaintiff's domicile an almost overwhelming interest in having its law control the litigation." *Id*. at 5, citing Note, *The Choice of Law in Multistate Defamation and Invasion of Privacy: An Unsolved Problem*, 60 Harv. L. Rev. 941 (1947). And in *Tobinick*, the court expressly held that California's anti-SLAPP statute could be invoked to seek dismissal of a defamation action filed in Florida by a California corporation against a blogger located in Connecticut.

4th 811, 821, 50 P.3d 733, 739 (2002), citing section 425.16(b)(2) of the California Code of Civil Procedure. Moreover, plaintiffs must present evidence that not only is sufficient to establish a prima facie case on its claims, but that can defeat applicable affirmative defenses. *Bently Reserve L.P. v. Papaliolios*, 218 Cal. App. 4th 418, 426, 160 Cal. Rptr. 3d 423, 428 (2013). Rhode Island's anti-SLAPP immunity may be invoked by "an appropriate motion" which could be, for example, a motion for summary judgment relying on affidavits. *Hometown Properties v. Fleming*, 680 A.2d 56 (1996), citing R.I. Gen. Laws Section 9-33-2(e).

Both law and evidence must be considered in weighing Myvesta's motion to dismiss under Rule 12(b)(1) and 12(b)(6). A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)—here, based on lack of diversity jurisdiction and lack of standing—demands that the plaintiff present evidence as well as demonstrating the propriety of jurisdiction. Once challenged, "the party invoking subject matter jurisdiction . . . has the burden of proving by a preponderance of the evidence the facts supporting jurisdiction." *Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29, 31 (1st Cir. 2008); *see also Acosta-Ramirez v. Banco Popular de Puerto Rico*, 712 F.3d 14, 20 (1st Cir. 2013). And defects in subject matter jurisdiction cannot be waived through the purported consent of a defendant. *Hydrogen Technology Corp. v. United States*, 831 F.2d 1155, 1162 n.6 (1st Cir.1987); *Daley v. Town of New Durham*, 733 F.2d 4, 7 (1st Cir. 1984) (jurisdictional "defenses" cannot be waived). When considering a motion to dismiss under Rule 12(b)(6), a court looks primarily to the complaint to determine whether it states a facially plausible legal claim, disregarding statements in the complaint that merely offer

> legal conclusion[s] couched as ... fact[ ]" or "[t]hreadbare recitals of the elements of a cause of action. *Id.* at 1949-50. A plaintiff is not entitled to proceed . . . by virtue of allegations that merely parrot the elements of the cause of action.

> *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). And "the Court is not limited to considering the plaintiff's complaint. . . .  A court may consider not only the complaint, but also the "facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice. *Jorge v. Rumsfeld*, 404 F.3d 556, 559 (1st Cir. 2005).  In addition, when a "complaint's factual allegations are expressly linked to 'and admittedly dependent upon' a document (the authenticity of which is not challenged), that document effectively merges into the pleadings. *Beddall* [*v. State Street Bank & Trust Co.*], 137 F.3d [12,] 17 (1st Cir. 1998).  Moreover, the district court appropriately may consider the whole of a document integral to or explicitly relied upon in a complaint, even if that document is not annexed to the complaint. *Jorge*, 404 F.3d at 559."
>
> *Narragansett Elec. Co. v. Constellation Energy Commodities Grp.*, 526 F. Supp. 2d 260, 268 (D.R.I. 2007).

Finally, in the First Circuit "it is well established that affirmative defenses . . . may be raised in a motion to dismiss an action for failure to state a claim . . . [so long as] the facts establishing the defense [are] clear 'on the face of the plaintiff's pleadings.'" *Blackstone Realty LLC v. F.D.I.C.*, 244 F.3d 193, 197 (1st Cir. 2001).

On these standards, the complaint is subject both to dismissal under Rule 12(b) and to an award of attorney fees under the applicable anti-SLAPP statute.

## II.     THE PAPERS SUBMITTED BY PLAINTIFF DO NOT CARRY HIS BURDEN OF SHOWING THAT THE COURT HAS SUBJECT MATTER JURISDICTION.

The first reason why the complaint should be dismissed is that there is no admissible evidence supporting plaintiffs' assertion of subject matter jurisdiction.  Plaintiff has brought a defamation claim under state law, and asserts that the Court has diversity jurisdiction.  However, the complaint pleads only damages "in excess of $15,000."  Complaint (DN 1) ¶ 1.  The diversity statute, 28 U.S.C. § 1332, provides for federal jurisdiction over cases where the amount in controversy exceeds $75,000.  Although a general allegation in the complaint that the amount in controversy exceeds $75,000 would have been sufficient at the pleading stage, *Gibbs v. Buck*, 307

U.S. 66, 72 (1939), once jurisdiction is challenged, the plaintiff has the burden of alleging with sufficient particularity facts supporting the jurisdictional amount. *Dep't of Recreation & Sports of Puerto Rico v. World Boxing Ass'n*, 942 F.2d 84, 88 (1st Cir. 1991). Because that test is not met here, the suit must be dismissed for that reason alone.

Moreover, although the complaint alleges generally that defendant Garcia is the author of the two anonymous comments, and that Garcia lives in Rhode Island, those allegations are not evidence of Garcia's Rhode Island citizenship; nor is there probative evidentiary value in the fact that a signature purporting to be Garcia's appears, unsworn, on signature lines on the consent motion and the proposed order that gives an address in "Warwick, RI." Moreover, there is significant evidence that casts doubt on the veracity of the allegation that the author of the comments is from Rhode Island. Most important, the operator of the web site, Myvesta, has access to the IP addresses from which the anonymous comments were posted, and, as many courts have observed, geolocation services allow the approximate location of Internet users to be determined through their IP addresses. *E.g., AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 996 (D.C. Cir. 2014); *United States v. Cray*, 450 F. App'x 923, 934 (11th Cir. 2012). The Rhode affidavit shows that the IP addresses shown for each of the anonymous comments indicate that they were posted from California, which not only casts doubt on the bare allegation that the proper defendant in this case is a Rhode Island citizen, but strongly suggests that the real poster or posters are from California, and hence not diverse. Moreover, although the address listed for Deborah Garcia is 1588 Main Street in Warwick, there is no such address in Warwick, although that address does exist in **West** Warwick. Levy Affidavit ¶¶ 10-11. Myvesta does not claim to have done a thorough search that decisively negates the proposition that there is someone named Deborah Garcia in Rhode Island; but the burden of showing

diversity rests on plaintiff and that burden has not been carried in light of the record.[7]

Apart from the lack of evidence supporting diversity, Bradley Smith does not have standing to sue over the allegedly defamatory comments because they are not about him. The comments are set forth in the complaint and make no mention of Bradley Smith. One of the comments refers in a disparaging manner to "Matt" (apparently, Matt Hearn who also posted comments in the discussion following the web site article) and to "Stanley," but neither refers to plaintiff Smith. The complaint does allege, "on information and belief," that "Defendant . . . is the party referenced in the posting as the former employee," ¶ 6, but there is no express allegation that the defamatory statements have anything to do with Bradley Smith the individual.

The Supreme Court has held, as a matter of First Amendment law, that a statement must be "of and concerning" the plaintiff for that individual to be able to bring a defamation claim over that statement. *Rosenblatt v. Baer*, 383 U.S. 75, 81 (1966); *New York Times v. Sullivan*, 376 U.S. 254, 289 (1964). Every state of which we are aware similarly imposes an of and concerning requirement as a matter of state law. *E.g.*, *Great Am. Ins. Co. v. Riso, Inc.*, 479 F.3d 158, 161 (1st Cir. 2007) (California law); *Budget Termite & Pest Control v. Bousquet*, 811 A.2d 1169, 1172 (R.I. 2002) (Rhode Island law); *Carey v. Evening Call Pub. Co.*, 74 R.I. 473, 478, 62 A.2d 327, 330 (1948) (Rhode Island law). When a statement is not of and concerning the plaintiff, he lacks standing to

---

[7]Intervenor submits that diversity should be determined based on the citizenship of Bradley Smith, the named plaintiff, even though he disclaims involvement in the filing. In the event the Court were to choose not to base its diversity determination on Smith's citizenship, and decided that there is **nobody** on the plaintiff's side of the caption, or that there was only a Doe on the plaintiff's side, there would still not be diversity. Still another alternative would be to treat Rescue One Financial as the real party in interest, on the ground that the complaint was filed by its agent, RIR 1984, in pursuance of the agency created by the agreement between the two companies; again, in that event, the plaintiff would be Californian and the individual defendants are either unknown or likely Californian and hence not diverse.

sue. *Vice v. Kasprzak*, 318 S.W.3d 1, 14 (Tex. App. 2009); *Marshall Investments Corp. v. R.P. Carbone Co.*, 2006 WL 2644959, at *4 (E.D. La. Sept. 13, 2006).

One of the anonymous comments makes specific reference to the corporation "Rescue One Financial," whose founder and CEO is Bradley Smith. But defamation law observes the corporate formalities—the owner of a company can no more sue over statements that denigrate his company than the company may sue for statements that denigrate the owner. *Gilbert Shoe Co. v. Rumpf Publishing Co.*, 112 F. Supp. 228, 229 (D. Mass.1953); *Church of Scientology of California v. Flynn*, 578 F. Supp. 266, 268 (D. Mass. 1984). *See also Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006). Although facts developed since the complaint was filed suggest that Rescue One Financial was the real intended beneficiary of this lawsuit, the complaint does not allege that any false statements were made about that company.

Therefore, the complaint should be dismissed for lack of subject matter jurisdiction.

### III.   THE COMPLAINT SHOULD BE DISMISSED AS UNTIMELY.

Under California law, the statute of limitations for libel claims is one year. *Schneider v. United Airlines*, 208 Cal. App. 3d 71, 76, 256 Cal. Rptr. 71, 74 (Cal. Ct. App. 1989). Under Rhode Island law, the statute of limitations is three years. *Mikaelian v. Drug Abuse Unit*, 501 A.2d 721, 724 (R.I. 1985). The complaint alleges that the anonymous comments were posted in August 2012, and the complaint was not filed until March 23, 2016. (The complaint has the date of February 22, 2015 written at the end of page 7, but both the docket and the ECF filing line at the top of the complaint reflect the filing in March 2016). The date of publication starts the running of the statute of limitations. Even if a discovery rule were applied, *but see id.*, because Bradley Smith himself commented in 2012 on the article to which the anonymous comments were posted (*see* Rhode

Affidavit ¶ 19 and Exhibit B), application of a discovery rule would not toll the statute in this case. Plaintiff has pleaded himself out of court on limitations grounds, hence the complaint is subject to dismissal under Rule 12(b)(6), and to being stricken as a SLAPP.

IV. **THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM BECAUSE THE ALLEGEDLY DEFAMATORY COMMENTS ARE NOT ABOUT PLAINTIFF BRADLEY SMITH.**

At the end of section I of this brief, Myvesta argued that the complaint should be dismissed for lack of standing, which goes to subject matter jurisdiction, because the anonymous comments are not "of and concerning" the plaintiff, Bradley Smith. Regardless of whether the Court agrees that this defect goes to standing, it is plainly a requirement for a valid cause of action for defamation under either Rhode Island or California law. *Doe 2 v. Superior Court*, 1 Cal. App.5th 1300, 2016 WL 4097089, at *5 (Cal. App. 2016); *Budget Termite & Pest Control v. Bousquet*, 811 A.2d 1169, 1172 (R.I. 2002); *Riverhouse Pub. Co. v. Porter*, 287 F. Supp. 1, 3 (D.R.I. 1968). Both Rhode Island and California law have made "of and concerning" a condition of libel liability since long before *New York Times v. Sullivan* was decided. *Carey v. Evening Call Pub. Co.*, 74 R.I. 473, 478, 62 A.2d 327, 330 (1948); *Williams v. Seiglitz*, 186 Cal. 767, 771, 200 P. 635, 636 (1921). The complaint alleges that the **defendant** is "the former employee" that is mentioned in allegedly defamatory material, but nothing in the complaint alleges that the defamation is about the individual plaintiff in whose name this case was filed. Consequently, the complaint should be dismissed for failure to state a claim.

V. **RELIEF AGAINST MYVESTA BASED ON ALLEGEDLY DEFAMATORY COMMENTS VIOLATES FEDERAL LAW.**

Although the complaint seeks relief only against the putative individual defendant Deborah

Garcia, the "consent motion" submitted with the complaint seeks relief directly harming the interests of defendant-intervenor, Myvesta, in the event that it does not honor a request from the individual defendant to remove "her" comments—removal of two entire pages from search engine databases. But the issuance of relief against Myvesta on the theory that it was hosting allegedly defamatory content would violate federal law. in two additional respects.  First, section 230 of the Communications Decency Act, 47 U.S.C. § 230, bars the granting of any relief against Myvesta based on the posting of allegedly defamatory content in the interactive comment section of its web site. *Universal Commc'n Sys. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007); *Giordano v. Romeo*, 76 So. 3d 1100, 1102 (Fla. Dist. Ct. App. 2011). Moreover, Rule 65 of the Federal Rules of Civil Procedure does not authorize extending injunctive relief against Garcia, as the putative poster, to Myvesta, absent evidence that it actively aided and abetted violation of the injunction against Garcia. *Blockowicz v. Williams*, 630 F.3d 563, 568 (7th Cir. 2010).

### VI. MYVESTA SHOULD BE AWARDED ATTORNEY FEES AND DAMAGES EITHER UNDER THE ANTI-SLAPP STATUTE, OR PURSUANT TO THE COURT'S INHERENT AUTHORITY TO IMPOSE SANCTIONS

Once the case is dismissed, defendant-intervenor seeks an award of attorney fees and expenses under the applicable anti-SLAPP statute—under chapter 33 of title 9, the Limits on Strategic Litigation Against Public Participation Act, if the Court applies Rhode Island law, or under California's statute, section 425.16 of the California Code of Civil Procedure, if the Court concludes that California law applies. Both statutes provide for awards of attorney fees and expenses when plaintiffs file lawsuits over speech on matters of public concern (Rhode Island) or in connection with an issue of public interest (California). California's law provides for an award of fees if the action is dismissed as a result of a motion to dismiss based either on the complaint's failure to state a claim

or the plaintiff's inability to present sufficient evidence to establish a probability that plaintiff will prevail in the action (section 425.16(b)(1)), while Rhode Island provides for an award of attorney fees either if the defendant secures early dismissal through "an appropriate motion" or if the defendant prevails at trial. Section 9-33-2(d), discussed in *Alves v. Hometown Newspapers*, 857 A.2d 743, 757 (R.I. 2004). Here, the complaint is subject to being dismissed on its face, considered together with documents that can properly be considered on a Rule 12(b) motion. Consequently, the court should award fees against Bradley Smith and/or those who filed the case in his name.

In the alternative to awarding fees under the relevant state's anti-SLAPP statute, given the apparently fraudulent nature of the pro se filings, the Court is requested to award attorney fees under its inherent authority. *F.A.C., Inc. v. Cooperativa De Seguros De Vida De Puerto Rico*, 563 F.3d 1, 6 (1st Cir. 2009). In that regard, intervenor notes that if the Court dismisses the action on jurisdictional grounds, that would not impede the Court's authority to award attorney fees. *Willy v. Coastal Corp.*, 503 US 131 (1992); *Augustyniak Ins. Group v. Astonish Results*, 2013 WL 998770, at *5 (D.R.I. Mar. 13, 2013); *Mills v. Brown*, 372 F. Supp. 2d 683, 693 (D.R.I. 2005).

Assuming that Smith proves, rather than simply asserting through counsel, that he had nothing to do with the filing of this lawsuit, intervenor intends to argue that the SLAPP remedies or sanctions should be awarded against the persons responsible for the filing of the case: Richart Ruddie and his company, RIR 1984 LLC, as well as the principal on whose behalf Ruddie was acting in seeking the de-indexing of web pages, which currently appears to be Rescue One Financial. However, intervenor does not suggest that the Court should address the issue of who should be sanctioned in ruling on the motion to dismiss. Rather, intervenor urges the Court to rule only that an award will be made but to invoke its authority under Rule 54(d)(2)(B) of the Federal Rules of

Civil Procedure to establish a briefing schedule for a motion to determine the amount of fees (and damages), and the persons against whom those amounts should be awarded. Because the dismissal of the action will establish a predicate for that briefing, intervenor is giving notice of this motion to Ruddie, RIR1984, and Rescue One Financial so that they can appear to oppose dismissal, should they desire to do so.

## CONCLUSION

The accompanying motion to dismiss the complaint should be granted. The Court should call for briefing on the amount of attorney fees and damages to be awarded pursuant to the anti-SLAPP law or pursuant to the Court's inherent authority, and against whom, on a schedule consistent with Rule 54(d) of the Federal Rules of Civil Procedure.

Respectfully submitted,

    /s/   Paul Alan Levy
Paul Alan Levy (pro hac vice)
Michael Kirkpatrick

Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

    /s/ Jeffrey L.  Levy
Jeffrey L.  Levy (RI Bar No. 9233)
Charles D. Blackman (RI Bar No. 5522)

Levy & Blackman LLP
Suite 2
469 Angell Street
Providence, Rhode Island  02906
(401) 437-6900
jlevy@levyblackman.com

November 22, 2016                                        Attorneys for Intervenor

## CERTIFICATE OF SERVICE

I hereby certify that, on this 22nd day of November, 2016, I am serving the foregoing Motion to Dismiss and its supporting Memorandum of Law, and the Affidavits of Paul Alan Levy and Steve Rhode, on Bradley Smith (the nominal plaintiff) and Rescue One Financial (the company that signed the "de-indexing" agreement previously filed) through their counsel Robby Birnbaum, Esquire at robby.birnbaum@gmlaw.com (pursuant to agreement with Mr. Birnbaum that he will accept copies by email). In addition, I am serving the papers on Richart Ruddie and RIR1984 LLC by sending them to rich@profiledefenders.com and help@profiledefenders.com, addresses to which I have previously sent documents to Mr. Ruddie that were not bounced back as undeliverable

                                                /s/ Paul Alan Levy
                                         Paul Alan Levy

                                         Public Citizen Litigation Group
                                         1600 20th Street, N.W.
                                         Washington, D.C. 20009
                                         (202) 588-7725
                                         plevy@citizen.org

                                         Attorney for Myvesta Foudnation